**In re Louis and Theresa SCHEXNYDER, Debtor.**

**In re Dean and Stephanie SCHEXNYDER, Debtor.**

**In re Louis and Arlene SCHEXNYDER, Debtor.**

**PELICAN PRODUCTION CREDIT ASSOCIATION, Plaintiff,**

**v.**

**Ruth J. COCO, Defendant.**

**Bankruptcy Nos. 583–01264–A07, 583–01265–A07 and 583–01283–A07. Adv. No. 583–0083.**

United States Bankruptcy Court, W.D. Louisiana, Alexandria Division.

Aug. 28, 1984.

H. Gregory Walker, Alexandria, La., for Pelican Production Credit Ass'n.

Marc Dupuy, Jr., Marksville, La., for Ruth J. Coco.

## FINDINGS OF FACT

LeROY SMALLENBERGER, Bankruptcy Judge.

Pelican Production Credit Association filed this proceeding, on April 10, 1984, to void a transfer made prior to the initial filing of this bankruptcy proceeding by the Schexnyder family. This transfer was made by Mid-State Elevator Company, Inc., on behalf of the Schexnyder family, for the amount of $7,927.34, which amount is reflective of the payment for storage of beans on the Coco property.

In 1978, grain storage and dryer facilities were installed upon the Coco farm. In the years following, 1979 to 1982, the lessor, Ruth Coco, entered into oral leasing agreements, whereby the lessees were required to harvest and store their crop in the said storage bins. The lessees were required to pay 30% of the crops produced and harvested plus $6.00 per acre farmed for the storage and drying facilities. The requirement for storage of crops in the storage facilities placed on the Coco farm is an integral part of the entire lease of farming property by Ruth Coco.

In 1982, the Schexnyder family leased 1,391 acres from Ruth J. Coco, under the terms described previously.

The Schexnyder's financed the raising of this crop by placing a crop pledge in favor of the Alexandria Production Credit Association, now known as Pelican Production Credit Association hereafter referred to as P.P.C.A.

This crop was harvested in the fall of 1982. It was stored and dried in the bins located on the Coco farm. On June 16, 1983, the Mid-State Elevator Company, Inc., purchased said crop and paid to Mrs. Coco and the debtors jointly, $27,736.93 and $7,927.34.

## CONCLUSIONS OF LAW

Plaintiff in this adversary proceeding, Pelican Production Credit Association, hereafter referred to as "P.P.C.A.", wishes to have the lease that existed between Ruth J. Coco and the Schexnyder family to be classified as two separate leases and not one lease. P.P.C.A. supports this argument by pointing out that there was (1) a separate check issued for the use of the storage bins and (2) the rent for use of the storage bins was calculated on a per acre farmed basis, whereas, the remaining rent was calculated on a percentage of the crops produced and harvested. Based on this construction, P.P.C.A. then applies the last sentence of La.R.S. 9:4341, which reads,

> "The right of a pledge thus conferred shall be subordinate to that of the claim of laborers for wages and for the rent upon the land upon which the crop is being produced."

Therefore, by separating the elements of the lease agreement, the pledge of the crops is subordinate only to the amount paid which was calculated on a percentage of crops produced and harvested.

This Court will first analyze the issue of whether or not there was one lease or two separate leases. Mrs. Coco stated that there was only one lease and that one lease consisted of several obligations, those being the use of the land, use of the grain bins, and sale of crop in the preceding year.

Failure of doing any one of these requirements would have put the lessee in default of the lease agreement. Louisiana Civil Code Article 2705 states:

> "The lessor has for the payment of his rent, *and other obligations of the lease,* a right of pledge on the movable effects of the lessee, which are found on the property leased."

This article seems to imply that a lease may contain component parts. The Fifth Circuit Court of Appeals in *Burdon Central Sugar Refining Company v. Payne,* 167 U.S. 127, 17 S.Ct. 754, 42 L.Ed. 105 (1897) conceded the appellee's view of Louisiana law in interpreting leases, as follows:

> "... the obligation resulting from a clause in a lease providing that the lessee should repair and keep in repair the leased premises was secured by the lessor's privilege." *Warfield v. Oliver,* 23 La. ANN. 612.

> "... when a contract of lease provided for an attorney's fee in the event of suit to recover the rent, the amount of the stipulated fee was also so secured." *Fox v. McKee,* 31 La. ANN. 67, *Henderson v. Meyers,* 45 La. ANN. 791, 13 So. 191.

Also in the area of mineral leases, the Court finds support for finding one lease. A mineral lease may contain several provisions for the calculation of and payment of rent, i.e. royalties, deferred development, delay rentals, or shut in payments, yet in each case there is but one lease agreement. In the instant case, this Court is of the opinion that it would be unduly burdensome to apply plaintiffs narrow interpretation of La.R.S. 9:4341 and require a lessor of Farm property to break down each lease payment as to what was paid for rental of land with crops planted on them, what was paid for use of farm implements, what was paid for servitude usage, or what was paid for usage of sheds. This is merely a logical extension of a narrow interpretation of La.R.S. 9:4341. Though in the present case there was a separate check, this appears to be mainly due to convenience and done so in order to equitably charge the lessee for what he leased.

Therefore, this Court is of the opinion that there was only one lease agreement.

Even if it was found to have been two separate leases, one for the farm land and one for the grain bins, there would have existed a lessors privilege for the rental of the bins. This privilege arises out of the situation of the parties. i.e. Lessor/Lessee. The main problem presented therefore is a ranking problem and not one of whether or not there was a privilege. Though La.R.S. 9:4341 contains a ranking in its last paragraph, it is not the only statute giving a ranking schedule. Indeed the Civil Code and Revised Statutes are full of privileges, special privileges and exceptions to all of them, all providing fertile ground for numerous law review articles exploring the realm of "vicious circles". Nevertheless, since the enactment of La. R.S. 9:4341, La.R.S. 9:4521 has been amended by Act 1950, No. 115, § 1, and as amended it is the latest enactment of the legislative will. It reads as follows:

§ 4521 Rank of Privileges and Pledges on Crops

The privileges and pledges on crops shall be *ranked* in the following order of preference:

(1) Privilege of the laborer, the thresherman, combineman, grain drier and the overseer.

(2) Privilege of the lessor.

(3) Pledges, under R.S. 9:4341, in order of recordation.

(4) Privilege of the furnisher of supplies and of money, of the furnisher of water, and of the physician.

Upon further examination of La.R.S. 9:4341, one finds that it is in Subpart A. *IN GENERAL*, under PART III. CROP PLEDGES. Also, in the last sentence of § 4341, it is being pointed out that the crop pledge *shall be subordinate* to.... It is not stating what the crop pledge shall rank ahead of. Instead, it is merely stating that it shall always be behind the claim for wages and rent upon the land where the crop is produced. If the legislature had intended this to be an exclusive ranking, it would have added the word "only", so as to read, "The right of pledge thus conferred shall *only* be subordinate to that...."

Therefore, this Court is of the opinion that L.S.A.—R.S. 9:4521 is the appropriate article to use in ranking the crop pledge given to P.P.C.A. and it will rank behind the privilege of the lessor, Ruth J. Coco, on the basis of a single lease or in the alternative as a grain drier, as found in paragraph 1 of § 4521. This Court is also of the opinion that even if there were two separate leases, the fact that Ruth J. Coco would be a lessor in both instances would entitle her to a ranking ahead of P.P.C.A. under the terms of § 4521.